UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ARMANDO A. P.,[1]

        Petitioner,

       v.

TIM ROBBINS, et al.,

        Respondents.

No. 1:26-cv-01388-TLN-CKD

**ORDER**

This matter is before the Court on Petitioner Armando A. P.'s ("Petitioner") Motion for Temporary Restraining Order ("TRO"). (ECF No. 17.) Respondents filed an opposition. (ECF No. 19.) Petitioner replied. (ECF No. 21.) For the reasons set forth below, Petitioner's Motion is GRANTED. Respondents are ORDERED to IMMEDIATELY RELEASE Petitioner.

///

///

---

[1] As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits Petitioner's full name, using only his first name and last initial, to protect sensitive personal information. *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

1

## I.    FACTUAL BACKGROUND[2]

This matter arises out of a challenge to immigration detention. (ECF No. 1.)  Although Petitioner was born in Guatemala, he has resided in the United States for the last 22 years.  (ECF No. 17 at 2.)  Petitioner came to the United States at the age of fifteen.  (*Id.*)  Since then, Petitioner has grown up here.  (*Id.*)  Over the last two decades, Petitioner has established a life in the United States.  (*See id.*)  He has obtained gainful employment and started a family, including a 12-year-old U.S. citizen daughter who relies on Petitioner for care.  (*Id.* at 3.)

On July 18, 2024, Petitioner was detained by immigration authorities. (*Id.*)  On August 23, 2024, he was grated bond and released.  (*Id.*) Petitioner asserts he has complied with all the conditions of his release.  (*Id.*)

It appears that removal proceedings remain pending against Petitioner.  Petitioner has also applied for asylum, cancellation of removal, and adjustment of status.  (ECF No. 1 at 11.)

Petitioner has no criminal history in his entire 22 years residing in the United States.  (*Id.*)

Nevertheless, on January 14, 2026, at a scheduled appointment, Petitioner was detained by U.S. Immigration and Customs Enforcement ("ICE") without notice or an opportunity to be heard.  (ECF No. 17 at 3.)  Petitioner has now been detained for two months without a bond hearing.  (*See id.*)

## II.    STANDARD OF LAW

To determine whether to issue a temporary restraining order, courts consider whether a petitioner has established "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Petitioner must "make a showing on all four prongs" of the *Winter* test. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

In evaluating a petitioner's motion, a district court may weigh petitioner's showings on the *Winter* elements using a sliding-scale approach. *Id.*  A stronger showing on the balance of the

---

[2]    The facts are largely taken from the instant motion and the habeas petition (ECF Nos. 1, 17), Respondents did not engage with or dispute these facts in their opposition (ECF No. 19).

hardships may support issuing a TRO even where the petitioner shows that there are "serious questions on the merits . . . so long as the [petitioner] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.*  Simply put, a petitioner must demonstrate, "that [if] serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply" in petitioner's favor in order to succeed in a request for a TRO. *Id.* at 1134–35.

**III.    ANALYSIS**

The Court considers whether Petitioner has met his burden as to each of the *Winter* elements.

A.        Likelihood of Success on the Merits

Petitioner has established a likelihood of success on his claims that his detention violates the Immigration and Nationality Act ("INA") and the Fifth Amendment Due Process Clause. (ECF No. 1 at 11–12.)  The Court discusses each claim in turn.

*i.    Violation of the INA*

Under the INA, 8 U.S.C. § 1226(a) "provides the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022).  Section 1226(a) provides the Government broad discretion whether to release or detain the individual and it provides several layers of review for an initial custody determination. *Id.*  It also confers "an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change." *Id.* at 1202.  Conversely, 8 U.S.C. § 1225(b)(2) mandates detention during removal proceedings for applicants for admission and does not provide for a bond hearing.

Until the U.S. Department of Homeland Security changed its policy in July, the Government consistently applied § 1226(a), not § 1225(b)(2), to noncitizens residing in the United States who were detained by immigration authorities and subject to removal.

Courts nationwide, including this one, have overwhelmingly rejected the Government's new legal position and have found DHS's July Policy unlawful. *See Morales-Flores v. Lyons*,

3

No. 1:25-CV-01640-TLN-EFB, 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025) (explaining this Court's reasons for taking this position and collecting cases).

Section 1225(b)(2) applies only to "applicants for admission" "seeking admission" — a category that does not include noncitizens like Petitioner who have already entered the United States and are residing here at the time ICE re-detains them. *See Morales-Flores*, 2025 WL 3552841, at *3. This Court has made its position on this statutory question clear. *Id.* Absent new argument, case law, or distinguishable facts, this Court will not reconsider its position.

Petitioner asserts he is being unlawfully detained under § 1225(b)(2) when § 1226(a) governs his detention. (ECF No. 17 at 3–4.) Respondents do not cite the detention authority on which they rely to detain Petitioner. (*See* ECF No. 19.) However, because alternate grounds for detention are not available here, the Court agrees with Petitioner that § 1226(a) likely governs his detention and he is entitled to the process that statute requires, including a bond hearing at a minimum.[3] Yet, Respondents have not provided any such hearing to Petitioner in nearly two months of detention. (ECF No. 17 at 3.)

Accordingly, Petitioner is likely to succeed on the merits of his claim that Respondents have violated the INA and improperly subjected him to mandatory detention without a hearing.

### ii.  *Violation of Procedural Due Process*

The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law. U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). These due process rights extend to immigration proceedings and detention. *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the

---

[3]    In addition to the inapplicability of 8 U.S.C. § 1225(b)(2), as described above, 8 U.S.C. § 1226(c) cannot apply because Petitioner does not have a criminal history; 8 U.S.C. § 1225(b)(1) cannot apply because Petitioner has been in the country for over two years; 8 U.S.C. § 1231 cannot apply because there is no final order of removal for Petitioner.

4

Constitution.  *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

### a)    Liberty Interest

As for the first step, the Court finds Petitioner has a protectable liberty interest. "[F]reedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'" *Hernandez*, 872 F.3d at 993 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992). "Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause." *See Rico-Tapia v. Smith*, No. CV 25-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025).  Liberty interest may be strengthened over time.  *See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).

Moreover, "the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release]." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025) (quoting *Morrissey*, 408 U.S. at 482) (modifications in original). "Accordingly, a noncitizen released from custody pending removal proceedings has a protected liberty interest in remaining out of custody." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025).  To determine whether an individual's conditional release rises to the level of a protected liberty interest, courts have "compar[ed] the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *R.D.T.M. v. Wofford*, No. 1:25-cv-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept 9, 2025).

Petitioner has a clear liberty interest here.  He has resided in the United States for over two decades and built a life here since he was a minor.  Even if he is removable, or his liberty is revocable, his liberty is still protected by due process. *See Hernandez*, 872 F.3d at 993; *Zadvydas*, 533 U.S. at 693.  Additionally, Petitioner's liberty interest was strengthened after he

5

was released from custody in 2024.  Under *Morrisey*, this release implied a promise that he would not be re-detained, during the pendency of his immigration proceedings, if he abided by the terms of his release.  During his release, Petitioner asserts he complied with all conditions of his release. (ECF No. 17 at 3.)  As this Court has found previously, along with many other courts in this district when confronted with similar circumstances, Petitioner has a clear interest in his continued freedom as he awaits the outcome of his immigration proceedings and that interest has been strengthened with time and Government conduct.  *See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).

### b)    Procedures Required

As to the second step — what procedures or process is due — the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  As set forth below, the Court finds Petitioner has established his due process rights were likely violated.

First, as explained above, Petitioner has a substantial private interest in his own liberty that is unquestionably affected by Respondents' actions detaining him.  The amount of time Petitioner has resided in this country underscores the gravity of its loss.  *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025) ("The lengthy duration of his conditional release as well as the meaningful connections Petitioner seems to have made with his community during that time create a powerful interest for Petitioner in his continued liberty.")  Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention.  *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

Second, the risk of erroneous deprivation is considerable given Petitioner has not received any hearing, either pre- or post-detention.  Thus, the Court finds there is a serious likelihood

6

Petitioner could be erroneously deprived of his liberty interest. Without any procedural safeguards to determine whether his detention was justifiable, the probative value of additional procedural safeguards is high. *R.D.T.M.*, 2025 WL 2617255, at *4.

Finally, the Government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal. *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). Where removal is not imminent under a final order of removal, "[t]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions." *Hernandez*, 872 F.3d at 994; *see also R.D.T.M.*, 2025 WL 2617255, at *4 ("Civil immigration detention, which is nonpunitive in purpose and effect is justified when a noncitizen presents a risk of flight or danger to the community.") (cleaned up).

Here, Petitioner's asylum application is ongoing and there is no removal order. (*See* ECF No. 1 at 11.) Additionally, as a condition of releasing him on bond in 2024, immigration authorities would have found that Petitioner was not a danger to the community nor a flight risk. His conduct of compliance since his release and lack of criminal history only strengthens such a finding. Indeed, Petitioner was detained while complying with a scheduled immigration appointment. (ECF No. 17 at 3.) Therefore, on this record, the Court cannot find any legitimate interest for Respondents to detain Petitioner.

Moreover, the cost and time of procedural safeguards are minimal here. Notice and custody determination hearings are routine processes for Respondents — they are the very processes owed to Petitioner under § 1226(a). Any delay in detention (if justified) for the time to provide notice and a hearing would be minimal. It would also be less of a fiscal and administrative burden for the Government to return Petitioner home to await a determination on his immigration proceedings than to continue to detain him. *See Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) ("[T]he Ninth Circuit has recognized that the costs to the public of immigration detention are staggering.").

On balance, this Court finds the *Mathews* factors demonstrate Petitioner was entitled to

7

notice and a pre-deprivation hearing.  The United States Supreme Court "usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original).  The Court describes post-deprivation remedies as the "special case" where those are "the only remedies the State could be expected to provide." *Id.* at 129.  Respondents have not provided any substantive opposition to the contrary.  (*See* ECF No. 19.)

Respondents have not provided Petitioner a custody hearing either pre- or post-deprivation.  Accordingly, with respect to his procedural due process claim, Petitioner has shown he is likely to succeed on the merits.

B.     Irreparable Harm

Petitioner has also established he will suffer irreparable harm in the absence of a TRO. The Ninth Circuit recognizes "irreparable harms imposed on anyone subject to immigration detention," including "subpar medical and psychiatric care in ICE detention facilities, the economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to [family.]" *Hernandez*, 872 F.3d at 995.  Such harm is present here.  Without relief, Petitioner faces the prospect of months or even years in immigration detention as he awaits a decision on his asylum application, separated from his minor daughter who relies on him for support.  (*See* ECF No. 17 at 3, 5.)  Moreover, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

In opposition, Respondents argue that Petitioner's "47-day delay" in filing this instant motion should weigh against a finding of irreparable harm and foreclose preliminary relief.[4] (ECF No. 19 at 2–3.)  Respondents rely on *Oakland Tribune* for the proposition that a "long delay" before filing for preliminary relief "implies a lack of urgency and irreparable harm."  762

---

[4]     Petitioner filed his habeas petition in the Central District of California 30 days after his detention (along with an initial motion for TRO that was denied without prejudice as deficient). (ECF Nos. 1, 2, 6.)  The petition was then transferred from the Central District to the Eastern District.  (ECF No. 7.)  Less than two weeks later, Petitioner filed a renewed motion for TRO in this Court.  (ECF No. 19 at 2.)

F.2d 1374, 1377 (9th Cir. 1985). In *Oakland Tribune*, a case about a newspaper monopoly, the district court denied preliminary injunctive relief after finding plaintiff's alleged injury was not irreparable and could be remedied by monetary damages. *Id.* As part of a multi-factor analysis of harm, the court noted the *nine-month* delay between plaintiff's filing of the complaint and request for injunctive relief mitigated against urgency and irreparability. *See id.*; Brief of Defendants-Appellees at 27–28, *Oakland Trib.*, 762 F.2d 1374 (No. 84-2535), 1984 WL 566530. Timing, alone, was not the basis for finding a lack of irreparable harm. 762 F.2d at 1377.

In reply, Petitioner contends irreparable harm exists in spite of any delay. (ECF No. 21 at 2–3.) Petitioner asserts that "harm is assessed on the facts and circumstances of the case, not merely [timing of the filing]" and, even if the Court finds the motion was delayed, the Court could still find irreparable harm warrants a TRO. (*Id.* at 3.) Petitioner also accounts for his efforts over the "47-day delay," during which time he found and secured counsel while in ICE detention; he consulted with counsel; counsel prepared and filed the petition; and counsel secured admission in the Eastern District of California before he could file a motion for TRO in this Court. (*Id.* at 2.)

The Court has already found that irreparable harm exists here and any short delay by Petitioner to secure counsel and prepare his case to vindicate his civil rights does not undermine that finding. Petitioner acted reasonably diligently to secure counsel from detention and file this motion. He has sought emergency relief from the first filing. Therefore, Petitioner has sufficiently established irreparable harm and the Court declines to deny the motion on timeliness grounds.[5]

### C.    Balance of Equities and Public Interest

As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the

---

[5]    When the case was first transferred to this District, the Court sought clarification as to whether Petitioner intended to file a motion for TRO and provided a 48-hour deadline for Petitioner to file. The deadline provides clarity for the Court as to which assigned judge will hear the matter. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1096 (E.D. Cal. 2025) (explaining the Eastern District's custom). This Court's inherent authority to manage its docket and the deluge of habeas petitions does not override the finding of irreparable harm here and it does not foreclose Petitioner's ability to seek emergency relief to prevent further irreparable harm.

balance of the hardships and the public interest merge." *Nat'l Urban League v. Ross*, 484 F. Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)).  The Court finds these factors also favor Petitioner.  First, the balance of equities tips decidedly in Petitioner's favor as the Government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983).  Second, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002.  In sum, these last two factors weigh in Petitioner's favor.

Therefore, the Court GRANTS Petitioner's request for a TRO and, as it has with many dozens of indistinguishable cases before him, orders Petitioner's release on the same terms as he was released prior to his detention. *See Yang v. Kaiser*, No. 2:25-cv-02205-DAD-AC, 2025 WL 2791778, at *11 (E.D. Cal. Aug. 20, 2025) (status quo ante is "the last uncontested status which preceded the pending controversy.").

## IV.   CONCLUSION

Accordingly, IT IS HEREBY ORDERED:

1. Petitioner's Motion for Temporary Restraining Order (ECF No. 17) is GRANTED.

2. Respondents must IMMEDIATELY RELEASE Petitioner Armando A. P. from custody under the same conditions he was released prior to his current detention.  Respondents shall not impose any additional restrictions on him, unless such restrictions are determined to be necessary at a future pre-deprivation/custody hearing.  At the time of his release, Respondents must also return all of Petitioner's documents and possessions.

3. Respondents are further ENJOINED and RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where: (a) Respondents show material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk.  At any such hearing, Petitioner shall be allowed to have counsel present.

4. The bond requirement of Federal Rule of Civil Procedure 65(c) is waived. *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011).

5. This matter is referred back to Chief United States Magistrate Judge Carolyn K. Delaney for all further proceedings, including Respondents' Motion to Dismiss (ECF No. 18).

IT IS SO ORDERED.

Date: March 16, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE

11